**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

COMMODITY FUTURES TRADING
COMMISSION,

                                    Plaintiff,

v.

YEHUDA L. BELSKY AND Y TRADING, LLC,

                                    Defendants.

CIVIL ACTION NO. __1:18-cv-5408__

Judge _____

ECF Case

**COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF,**
**RESTITUTION, AND CIVIL MONETARY PENALTIES**
**UNDER THE COMMODITY EXCHANGE ACT**

Plaintiff, Commodity Futures Trading Commission ("Commission" or "CFTC"), by its
attorneys, alleges as follows:

## I.    SUMMARY

1.       Since at least June 22, 2015, through the present (the "Relevant Period"),
Defendant L. Yehuda Belsky ("Belsky") a.k.a. Jay Bell, acting individually and on behalf of
Defendant Y Trading, LLC ("Y Trading," and together with Belsky, "Defendants"), has engaged
in a fraudulent scheme to solicit at least $1,258,000 from at least fourteen customers to trade
binary options on the North American Derivatives Exchange, Inc. ("Nadex")  in violation of the
Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1-27f (2012), and the regulations promulgated
thereunder ("Regulations"), 17 C.F.R. pts. 1-190 (2017).

2.       In solicitations of customers Belsky, acting both as an individual and at times
through Y Trading, made false and misleading claims including, but not limited to, that he:  (1)
was an expert binary options trader; (2) had a record of profitable binary options trading; and (3)
was successfully trading binary options on behalf of multiple customers at the time.

3.     Belsky solicited funds from prospective customers in order to conduct two distinct fraudulent schemes.  With regard to the first scheme, Belsky induced some customers to send Defendants at least $719,000 to trade binary options on their behalf.  With regard to the second scheme, Belsky induced customers into authorizing him to trade at least $539,000 of customer funds in the customers' Nadex binary options trading accounts.

4.     Belsky omitted material facts in his solicitations including, but not limited to, that he:  (1) was misappropriating customer funds; (2) had no binary options trading account in the name of Y Trading or in his own name from which to trade binary options; and (3) along with a company Belsky previously owned, Innovative Capital Management, LLC ("Innovative"), had been the subject of a December 19, 2008 Commission Order ("2008 Order") finding that Belsky and Innovative had committed a $1,250,000 fraud and lied to the National Futures Association ("NFA"), a registered futures association, during a routine audit.

5.     By surreptitiously trading binary options on Nadex, an online binary options exchange that is registered with the Commission as a Designated Contract Market ("DCM") and a Derivatives Clearing Organization ("DCO"), using some of his customers' credentials, Belsky violated the 2008 Order.

6.     On February 21, 2018, during investigative testimony under oath before the Commission, Belsky made false or misleading statements of material facts, or omitted to state in any such statements material facts that were necessary to make any statements of material fact made not misleading in any material respect, while he knew, or reasonably should have known, the statements he made to be false or misleading.

7.     By virtue of this conduct and conduct further described herein, Belsky, either directly or as a controlling person, has engaged, is engaging, or is about to engage in acts and

2

practices in violation of the Act and Regulations, specifically Sections 4m(1), 4*o*(1)(A) and (B), 6(c)(2), and 6c(a) of the Act, 7 U.S.C. §§ 6m(1), 6*o*(1)(A), (B), 9(2), 7 U.S.C. § 13a-1(a) (2012), and Defendants have engaged, are engaging, or are about to engage in acts and practices in violation of the Act and Regulations, specifically Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2012), and Regulation 32.4(a) and (c), 17 C.F.R. § 32.4(a), (c) (2017).

8.     Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), the Commission brings this action to enjoin such acts and practices and compel compliance with the Act and Regulations.  In addition, the Commission seeks civil monetary penalties and remedial ancillary relief including, but not limited to, trading and registration bans, restitution, disgorgement, post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

9.     Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II.     **JURISDICTION AND VENUE**

10.     **Jurisdiction**.  This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2012) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2012) (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  In addition, Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), provides that United States district courts possess jurisdiction to hear actions brought by the Commission for injunctive relief or to enforce compliance with the Act whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any

provision of the Act or any rule, regulation, or order thereunder.  The offered binary options at issue in this action constitute "options" pursuant to Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2012), because the assets underlying them were "commodities" pursuant to Section 1a(9) or 1(a)(19) of the Act, 7 U.S.C. § 1a(9), (19) (2012).

11.     **Venue**.  Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because Defendants transacted business in this District, and acts and practices in violation of the Act and Regulations occurred, are occurring, or are about to occur within this District.

### III.     THE PARTIES

12.     Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act and Regulations.

13.     Defendant **Yehuda L. Belsky** is an individual residing in Brooklyn, New York. Belsky conducted business individually and as the sole owner and operator of Y Trading.  Belsky and Innovative were the subjects of the 2008 Order, which found that they had engaged in fraudulent solicitation and misappropriation of customer funds in violation of Sections 4b(a)(2)(i), (ii), and (iii) and 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6b(a)(2)(i), (ii), (iii), 6o(1)(A), (B) (2006), and made false statements to NFA in violation of Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4) (2006).  The 2008 Order permanently prohibited Belsky from, among other things, trading on or subject to the rules of any registered entity, including any DCM, and ordered him to cease and desist from violating Section 4o(1)(A) and (B) of the Act.  Between 2002 and 2008 Belsky was registered with the Commission as an associated person ("AP"), and listed with NFA as principal, of Innovative.

14.     Defendant **Y Trading, LLC** is a New York limited liability company formed in February 2011.  Until approximately December 2016, the firm conducted business at 40 Wall Street, fifth floor, New York, New York.  Upon information and belief Belsky, the sole owner of Y Trading, operated the firm in an informal manner without keeping regular business records.  Y Trading, through Belsky, solicits customer funds for the purported purpose of investing in binary options.  Y Trading has never been registered with the Commission in any capacity.

## IV.     FACTS

### A.     Binary Options

15.     A binary option is a type of options contract in which the payout depends entirely on the outcome of a yes/no proposition, typically relating to whether the price of a particular asset that underlies the binary option will rise above or fall below a specified amount.  Unlike other types of options, a binary option does not give the holder the right to purchase or sell the underlying asset.  When the binary option expires, the option holder will receive either a pre-determined amount of cash or nothing at all.

16.     Binary options are "options," as defined by Section 1a(36) of the Act, 7 U.S.C. § 1a(36) (2012), and binary options on commodity futures and "commodities," as defined by Section 1a(9) or (19) of the Act, 7 U.S.C. § 1a(9), (19) (2012), are commodity option transactions pursuant to Section 4c(b) of the Act, 7 U.S.C. § 4c(b) (2012), and Regulation 32.2, 17 C.F.R. § 32.2 (2017).

### B.     Defendants' Fraudulent Solicitations and Omissions

17.     During the Relevant Period, Belsky, operating individually and at other times as Y Trading, induced customers to provide him with funds by touting his reputation as an expert binary options trader and offered finder's fees to individuals who introduced customers to him.

18.     Based on his purported binary options trading skills, Belsky provided paying customers with contracts that were six months in duration ("Y Trading Agreements").  Belsky promised to pay some of his customers a fixed ten percent (10%) per month return, which equates to a one-hundred and twenty percent (120%) annual rate of return.  Belsky promised other customers an unspecific share of the trading profits from his binary options trading.

19.     Despite using his customers' funds for binary options trading, which was prohibited by the 2008 Order, Belsky attempted to conceal the fact that he was doing so by omitting any reference to binary options trading in the Y Trading Agreements.  Instead, each Y Trading Agreement was captioned as an "Agreement/Note" and characterized the funds the customers provided to Belsky as six-month loans.  Verbally, however, Belsky told these same customers that the their funds would be used to trade binary options and that the high rate of return he offered was as a result of his ability to engage in profitable binary options trading.

20.     Belsky supported his assertion that he was a successful binary options trader with false and misleading statements, including claiming that he had developed a trading method for binary options trading that produced consistent profits on behalf of multiple clients.  In fact, his actual binary options trading had resulted in significant losses.

21.     From May 2017 to September 2017, Belsky also marketed himself and Y Trading through paid online social media and press releases.  Through at least thirteen online press releases he sought to bolster his image as a binary options authority and to "rehabilitate" his name by obscuring the 2008 Order.  Belsky's series of Newswire.com press releases echoed the sales pitch he made directly to customers and included the following claims:

     a.     "Belsky is a highly respected financial expert and trader";
     b.     "a world-renowned financial expert who has traded on various markets the world over";

    c.     "his greatest expertise is on binary options, and he has developed a method to make binary options trading more likely to be successful"; and

    d.     "honesty is another quality that sets him apart from other financial experts and traders."

22.    When soliciting some of his customers for the purpose of trading binary options, Belsky presented himself under the false identity "Jay Bell," and drafted and signed agreements with customers who provided him with funds as "Jay Bell." "Jay Bell" was neither Belsky's given name nor any legal name associated with his true name. On other occasions, Belsky also conducted business using his true name.

23.    By presenting himself to some customers as "Jay Bell," Belsky prevented them from conducting due diligence research that would have revealed his history of fraudulent financial activity and false statements found in the publicly-available 2008 Order that is connected with Belsky's true name and not with his false identity "Jay Bell."

24.    When soliciting customers, Belsky assured them that his established and successful binary options trading methods had historically produced a high level of profits.

25.    Upon information and belief, all of the representations Belsky made about his trading expertise and ability to generate profits for customers by trading binary options were knowingly false when made.

26.    On February 28, 2017, Belsky provided one group of potential customers with a fabricated binary options trading account statement in the name of Y Trading, including with the Nadex name and logo, in order to bolster his false claims of conducting profitable binary options trading in his own or Y Trading's account. Other customers relied on his verbal claims of purported trading expertise and past profits.

27.    This fictional Y Trading Nadex account statement that Belsky used to mislead his prospective customers listed supposedly profitable binary options trades based on CME E-mini

Nasdaq 100® Index Futures and CME E-mini S&P 500® Index futures purportedly made by Belsky.

28.      Belsky did not place any of the customer funds he collected in a Y Trading binary options trading account, contrary to the misleading statements he made to some of his customers when he induced them to provide funds for his binary options trading.  In fact, neither Belsky nor Y Trading maintained any binary options trading accounts in either of their names.

29.      Belsky did not inform any of his customers that he was the subject of the 2008 Order in which the Commission determined that Belsky and his prior company, Innovative, had committed fraud and lied to NFA during a routine audit.

**C.    Defendants' Collection of, and Failure To Repay, Customer Funds**

30.      During the Relevant Period, Defendants acquired and controlled customer funds in two ways.  For some customers, generally those who provided relatively smaller amounts of funds, Belsky requested or required that they provide funds to him in cash.  For customers who provided relatively larger amounts of funds Defendants directed them to send funds to a bank account in the name of Y Trading.

31.      During the Relevant Period, Defendants received at least $719,000 in the Y Trading bank account from at least eleven customers.

32.      Once Defendants obtained funds from their customers, they either failed to pay the promised ten percent per month return or stopped making such payments after a short period of time.  When customers demanded the return of their funds, Belsky sometimes made token payments and occasionally repaid customers who had provided Defendants with a relatively small amount of funds with other customer funds in a manner akin to a Ponzi scheme.

33.     In March 2017, several customers learned of Belsky's fraudulent trading history and demanded the return of their funds.  In or about July 2017, Belsky responded to their requests by falsely informing them that he could not return their funds because they had been frozen by the Commission.

**D.     Belsky's Rejected Nadex Application and Surreptitious Trading Using Customer Credentials**

34.     On or about May 13, 2015, Belsky applied for membership at, and sought to open a binary options trading account with, Nadex.  On May 19, 2015, Nadex's compliance personnel informed Belsky via email that it had denied his application for membership.

35.     On May 20, 2015, Belsky emailed a petition appealing the denial of his membership application to Nadex, arguing in part that binary options are different than commodity futures and therefore he should be granted membership with Nadex, notwithstanding the permanent ban language contained within the 2008 Order.

36.     Via letter dated June 15, 2015, Nadex's Chief Executive Officer ("CEO") responded to Belsky by notifying him that he had denied Belsky's appeal of Nadex's compliance department's decision to deny his application for Nadex membership.  Nadex's CEO also specifically explained to Belsky that, because Nadex is a "registered entity" under the Act, the 2008 Order prohibited him from trading directly or indirectly on Nadex, stating in relevant part:

> As you are likely aware, Nadex is a Derivatives Clearing Organization ("DCO") and Designated Contract Market ("DCM"), registered with the Commodity Futures Trading Commission ("CFTC").  The definition of "registered entity" as set forth in the Commodity Exchange Act (now codified in Section 1a(40), as revised by the Dodd-Frank Act), includes both "a board of trade designated as a contract market" and "a derivatives clearing organization" registered in accordance with sections 7 and 7a-1 of Title 7 of the United States Code.  As a registered DCM and DCO, Nadex falls under the definition of "registered entity."  As noted above, you are permanently prohibited from trading on any

registered entity, either directly or indirectly.  It is therefore clear that based upon the order imposed by the CFTC (to which you agreed) you are prohibited from trading on Nadex.

37.     Starting on or about a week after Nadex's CEO affirmed Nadex's denial of his membership application, Belsky requested or required at least three customers to open and fund binary options trading accounts at Nadex and provide him with their login credentials.

38.     Customers deposited at least $539,000 into their own Nadex accounts at Belsky's direction.  Belsky then surreptitiously commenced trading the personal funds of these customers' Nadex accounts in violation of the 2008 Order, which permanently prohibited Belsky from directly or indirectly trading on or subject to the rules of any registered entities.

39.     As an example, on or about June 22, 2015, Belsky induced Customer A to open an account at Nadex and then to provide Belsky with Customer A's login credentials.  Belsky used Customer A's login credentials to conduct trades in Customer A's binary options trading account from June 2015 through June 2016 without Nadex's knowledge.  Throughout this time, Belsky informed Customer A that he was trading in Customer A's Nadex account.

40.     During the aforementioned twelve-month period, Customer A deposited $14,000 into his Nadex binary options trading account, and Belsky lost approximately $13,000 of this amount through trading binary options in Customer A's Nadex binary options trading account.

41.     In or about January 2016, Belsky made an arrangement with another customer, Customer B.  Customer B entered into a "Managed Account Agreement" with Defendants and deposited a total of $500,000 into his binary options trading account at Nadex during January and February 2016.  Starting on or about February 1, 2016, Belsky conducted binary options trading in Customer B's binary options trading account without Nadex's knowledge.

Throughout this time, Belsky informed Customer B that he was trading Customer B's Nadex account.

42.     In less than two months Belsky lost approximately $200,000 trading binary options in Customer B's Nadex binary options trading account.

43.     Belsky traded various binary options in Customer A and Customer B's accounts, including, but not limited to, the "US 500," which is based on CME E-mini S&P 500® Index Futures, the "Wall Street 30," which is based on CBOT E-mini Dow® Index Futures, and the "US SmallCap 2000," which is based on CME E-mini Russell 2000® Index Futures.

44.     In or about March 2017, Belsky entered into new verbal agreements with Customers A and B that allowed Belsky to continue to surreptitiously trade funds in their respective Nadex binary options trading accounts using their login credentials.  In order to induce Customers A and B to continue allowing him to trade their accounts, Belsky falsely represented to them that he would be trading his own funds in their Nadex binary options trading accounts.  In reality, Belsky did not trade his own funds in the Nadex binary options trading accounts of Customers A and B.  Instead, Belsky transferred funds from his other customers to Customers A's and B's Nadex binary options trading accounts and covertly traded those customer funds using Customers A's and B's Nadex account login credentials.

45.     Specifically, concerning Customer A, in March 2017 Belsky caused $48,000 from his third-party customers to be deposited into Customer A's Nadex binary options trading account.  Belsky's binary options trading of third-party customer funds in Customer A's account resulted in the loss of approximately $42,500 before Belsky's trading ceased.

46.     Concerning Customer B, on March 9, 2017, Belsky caused $50,000 from his third-party customers to be deposited into Customer B's Nadex binary options trading account.

Belsky's binary options trading of third-party customer funds in Customer B's account resulted in the loss of almost all of the $50,000 before Belsky's trading ceased.

**E.     Belsky's Misappropriation of Customer Funds**

47.     Aside from the customer funds not lost through trading on Nadex, Belsky misappropriated the vast majority of the customer funds he collected.  Belsky used some customer funds as his personal "piggy bank" to make car, school, and credit card payments, and he also took large cash withdrawals that he used for unknown reasons.

48.     For example, between approximately February 24, 2017, and February 27, 2017, Belsky received wires totaling $335,000 from four customers, funds that he solicited for the purpose of binary options trading and for which he promised to pay the customers ten percent per month interest.  Belsky directed the funds to be wired to his Y Trading account at Citizens Bank in Brooklyn, NY.

49.     Of the $335,000 in customer funds Belsky received between approximately February 24, 2017, and February 27, 2017, only approximately $100,000 appears to be traceable to deposits made to the Nadex binary options trading accounts held in the names of Customers A and B.

50.     From approximately February 24, 2017, through March 24, 2017, Belsky spent approximately $20,000 of customer's funds that had been previously deposited to his Y Trading account at Citizens Bank to pay for personal expenses such as groceries, gasoline, and clothing, and to make automobile and credit card internet payments.  He also made cash withdrawals totaling approximately $69,000.

51.     At least $80,000 from the $335,000 in customer deposits made between February 24, 2017, and February 27, 2017, were used to repay Defendants' earlier customers, in a manner akin to a Ponzi scheme.

12

52.     Similarly, on or about April 27, 2017, Customer C wired $70,000 to Belsky's Y Trading account at Citizens Bank for the purpose of binary options trading.  From approximately April 27, 2017, to July 31, 2017, Customer C made additional deposits totaling $180,000 into the same Y Trading account.

53.     During the same time period, Belsky withdrew approximately $125,000 of Customer C's funds in cash from the Y Trading account at Citizens Bank and Belsky spent approximately $30,000 of Customer C's funds on personal expenses.  Belsky also appears to have paid approximately $95,000 of Customer C's monies to previous customers, in a manner akin to a Ponzi scheme.  Based on information and belief, none of Customer C's funds were deposited into any trading or investment accounts.

**F.      Belsky's Material Omissions**

54.     During the Relevant Period, Belsky failed to disclose the following material facts to the customers he solicited:

      a.      that the 2008 Order prohibited Belsky and his prior company, Innovative, from trading on, or subject to, the rules of any registered entity;

      b.      that the Commission, in the 2008 Order, had found Belsky and Innovative liable for defrauding their customers, including creating false account statements and misappropriating customer funds;

      c.      that, contrary to his customer agreements and verbal representations, Belsky was not depositing their funds into any Belsky or Y Trading binary options trading account; and

      d.      that, contrary to his customer agreements and verbal representations, Belsky was not using the majority of customer funds to trade binary options but was instead misappropriating most of these funds to pay for his personal expenses or, in some cases, to repay other customers in a manner akin to a Ponzi scheme.

**G.**     **Belsky's Violations of the 2008 Order**

55.     As recited in the 2008 Order Belsky, acting as a registered commodity pool operator and commodity trading advisor ("CTA"), defrauded his pool participants of funds totaling $1,250,000.  According to the 2008 Order, instead of using the funds he had solicited to purchase commodity futures and/or options contracts as promised, Belsky misappropriated at least $385,000 and created false commodity pool account statements that he provided to Innovative pool participants.

56.     Belsky neither admitted nor denied the allegations and conclusions contained in the 2008 Order, yet Belsky consented to the 2008 Order that required, among other things, that he cease and desist from violating the provisions of the Act he was found to have violated, and the payment of a civil monetary penalty of $100,000 and restitution in the amount of $1,250,000. Additionally, the 2008 Order prohibited him from certain activities related to his violations in order to protect the public.

57.     Among its specific provisions, the 2008 Order permanently prohibited Belsky from "directly or indirectly (a) trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2006)."

58.     During the Relevant Period Belsky violated the 2008 Order by surreptitiously conducting binary options trading on Nadex, a DCO that is a registered entity under the Act, through at least two of his customers' Nadex binary options trading accounts.

**H.**     **Belsky's False Statements to the Commission**

59.     On February 21, 2018, during investigative testimony under oath before the Commission, Belsky made false or misleading statements of material fact by repeatedly denying to the Commission that he solicited customer funds for the alleged purpose of trading in binary

options.  These statements were material because Belsky's use of the funds he solicited from customers to trade binary options on Nadex would have violated the 2008 Order.

60.     In addition, during his February 21, 2018 investigative testimony under oath before the Commission, Belsky made a series of false and misleading statements of material fact regarding the trading he had conducted in his customers' Nadex binary options trading accounts. Specifically, Belsky repeatedly falsely denied that he had conducted any binary options trading in any binary options trading accounts on Nadex, whether belonging to his customers or otherwise.  These statements were material because Belsky's trading of binary options trading accounts on Nadex would have violated the 2008 Order.

## V.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS

### COUNT ONE
### (Defendants Belsky and Y Trading)

### FRAUD IN CONNECTION WITH BINARY OPTIONS
### Violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2012), and Regulation 32.4(a) and (c), C.F.R. § 32.4(a), (c) (2017)

61.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

62.     Section 4c(b) of the Act states, in relevant part:

> No person shall offer to enter into, enter into or confirm the execution of, any transaction involving any commodity regulated under this Act which is of the character of, or is commonly known to the trade as, an "option," "privilege," "indemnity," "bid," "offer," "put," "call," "advance guaranty," or "decline guaranty," contrary to any rule, regulation, or order of the Commission prohibiting any such transaction or allowing such transaction under such terms and conditions as the Commission shall prescribe.

63.     Regulation 32.4(a) and (c) makes it unlawful for any person, directly or indirectly, to cheat or defraud or attempt to cheat or defraud any other person, or to deceive or attempt to

deceive any other person by any means whatsoever, in or in connection with any commodity option transaction.

64.     During the Relevant Period, Defendants cheated or defrauded, or attempted to cheat or defraud, customers by making false representations in connection with, among other things, the alleged success of Belsky's binary options trading, providing of fictional trading account statements to customers, assuming a false identity to solicit customers, and misappropriating customer funds.

65.      Defendants also failed to disclose material facts to customers regarding Belsky's background, including the existence of the 2008 Order in which the Commission determined that Belsky had engaged in commodity pool fraud and that he was subject to a trading ban.  Further, Defendants failed to disclose that customer funds would not be transferred to any Y Trading binary options trading accounts for binary options trading but instead would be used for Belsky's personal expenses, provided to other customers in a manner akin to a Ponzi scheme and, in some cases, used by Belsky to trade binary options in other customers' binary options trading accounts.

66.     Belsky controlled Y Trading and did not act in good faith or knowingly induced, directly or indirectly, Y Trading's conduct alleged in this Count.  Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), Belsky is liable for Y Trading's violations of Section 4c(b) of the Act and Regulation 32.4(a) and (c).

67.     The foregoing acts, misrepresentations, omissions, and failures of Belsky occurred within the scope of his employment, office, or agency with Y Trading.  Therefore, Y Trading is liable for these acts, misrepresentations, omissions, and failures pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2017).

68.     Each act of misappropriation, misrepresentation, or omission of material fact including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Section 4c(b) of the Act and Regulation 32.4(a) and (c).

### COUNT TWO
**(Defendant Belsky)**

**VIOLATION OF A COMMISSION ORDER**
**Violations of Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012)**

69.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

70.     Section VII, paragraph 3(a) of the 2008 Order prohibited Belsky from directly or indirectly:

> trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2006);

71.     During the Relevant Period, Belsky violated Section VII, paragraph 3(a) of the 2008 Order when he engaged in, controlled, or directed the trading in the Nadex binary options trading accounts of Customer A and Customer B by trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2006), currently codified in 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012).

72.     Belsky's conduct that violated the 2008 Order also violated Section 6c(a) of the Act because Belsky has engaged, is engaging, or is about to engage in any act or practice constituting a violation of an order issued under the Act and Regulations.

73.     Each act constituting a violation of the 2008 Order including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Section 6c(a) of the Act.

### COUNT THREE
**(Defendant Belsky)**

## FAILURE TO REGISTER AS A COMMODITY TRADING ADVISOR
### Violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012)

74.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

75.     Section la(12) of the Act, 7 U.S.C. § la(12) (2012), defines a CTA as any person who, for compensation or profit, engages in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading commodity options, among other things.

76.     Section 4m(1) of the Act makes it unlawful for any CTA, unless registered with the Commission, to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as a CTA.

77.     During the Relevant Period Belsky acted as a CTA when, for compensation or profit, he advised others by his directing the trading of customers' binary options trading accounts at Nadex while failing to register with the Commission as a CTA, in violation of Section 4m(1) of the Act.

78.     Each instance of Belsky acting as a CTA while failing to be registered as such including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Section 4m(1) of the Act.

## COUNT FOUR
### (Defendant Belsky)

## FRAUD BY A COMMODITY TRADING ADVISOR
### Violation of Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A),(B) (2012)

79.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

80.     Section 4*o*(1)(A) and (B) of the Act, in relevant part, makes it unlawful for a CTA, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly-

> (A)  to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or
> (B)  to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

81.     During the Relevant Period, through the foregoing conduct described in the paragraphs above, Belsky, while acting as a CTA, by using the mails or instrumentalities of interstate commerce, (i) employed devices, schemes, or artifices to defraud clients or prospective clients; and (ii) engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon clients, in violation of Section 4*o*(1)(A) and (B) of the Act.

82.     During the Relevant Period Belsky, acting for compensation or profit, engaged in the business of advising others as to the value of trading binary options through his direct trading of the Nadex binary options trading accounts of Customer A and Customer B.

83.     Each act of fraudulent solicitation including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Section 4*o*(1)(A) and (B) of the Act.

## COUNT FIVE
**(Defendant Belsky)**

**FALSE STATEMENTS TO THE COMMISSION**
**Violation of Section 6(c)(2) of the Act, 7 U.S.C. § 9(2) (2012)**

84.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

85.     Section 6(c)(2) of the Act prohibits making false or misleading statements to the Commission.  This provision makes it unlawful for:

> any person to make any false or misleading statement of a material fact to the Commission, including in any registration application or any report filed with the Commission under this chapter, or any other information relating to a swap, or a contract of sale of a commodity, in interstate commerce, or for future delivery on or subject to the rules of any registered entity, or to omit to state in any such statement any material fact that is necessary to make any statement of a material fact made not misleading in any material respect, if the person knew, or reasonably should have known, the statement to be false or misleading.

86.     On February 21, 2018, during investigative testimony under oath before the Commission, Belsky made false or misleading statements of material facts while he knew the statements he made to be false.  Specifically, Belsky repeatedly denied that he had solicited customer funds for the purpose of trading binary options contracts in response to direct questions by the Commission.

87.     On February 21, 2018, during investigative testimony under oath before the Commission, Belsky made an additional series of false and misleading statements by denying that he had at any time traded binary options in the Nadex binary options trading accounts of Customers A and B in response to direct questions by the Commission.

88.     Each false statement Belsky uttered during his investigative testimony under oath before the Commission on February 21, 2018, including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Section 6(c)(2) of the Act.

## VI.     RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), and pursuant to the Court's inherent equitable powers, enter:

A.      An order finding that Defendants violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2012), and Regulation 32.4(a) and (c), 17 C.F.R. § 32.4(a), (c) (2017);

B.      An order finding that Belsky violated Sections 4$o$(1)(A) and (B), 4m(1), and 6(c)(2) of the Act, 7 U.S.C. §§ 6$o$(1)(A), (B), 6m(1), 9(2) (2012), and violated Section VII, paragraph 3(a) of the 2008 Order;

C.      An order of permanent injunction prohibiting Defendants from violating Section 4c(b) of the Act and Regulation 32.4(a) and (c);

D.      An order of permanent injunction prohibiting Belsky from violating Sections 4$o$(1)(A) and (B), 4m(1), and 6(c)(2) of the Act and from violating Section VII, paragraph 3(a) of the 2008 Order;

E.      An order of permanent injunction prohibiting Defendants, and any of their agents, servants, employees, successors, assigns, attorneys, and persons acting in active concert or participation with Defendants, including any successor thereof, from, directly or indirectly:

(1)     Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

(2)    Entering into any transactions involving "commodity interests" (as that

term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2017)) for

Defendants' personal or proprietary account or for any account in which

Defendants have a direct or indirect interest;

(3)    Having any commodity interests traded on any Defendants' behalf;

(4)    Controlling or directing the trading for, or on behalf of, any other person

or entity, whether directly or indirectly, by power of attorney or otherwise,

in any account involving commodity interests;

(5)    Soliciting, receiving, or accepting any funds from any person for the

purpose of purchasing or selling any commodity interests;

(6)    Applying for registration or claiming exemption from registration with the

Commission in any capacity and engaging in any activity requiring such

registration or exemption from registration with the Commission;

(7)    Acting as a principal (as that term is defined in Regulation 3.1(a), 17

C.F.R. § 3.1(a) (2017)), agent, or any other officer or employee of any

person or entity registered, exempted from registration or required to be

registered with the Commission; and

(8)    Engaging in any business activity related to commodity interests.

F.    An order directing Defendants, as well as any successors thereof, to make full

restitution, pursuant to such procedure as the Court may order, to every customer whose funds

any Defendant received, or caused another person or entity to receive, as a result of the acts and

practices constituting violations of the Act and Regulations, as described herein, and post-

judgment interest thereon from the date of such violations;

G.      An order directing each Defendant to pay a civil monetary penalty, to be assessed by the Court, in an amount not to exceed the penalty prescribed by Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2012), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, 129 Stat. 584 (2015), title VII, Section 701, *see* Regulation 143.8, 17 C.F.R. § 143.8 (2017), for each violation of the Act and Regulations, as described herein;

H.      An order directing Defendants, and any successors thereof, to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2012); and

I.      Such other and further relief as the Court deems proper.

Dated:  September 26, 2018                    Respectfully submitted,


                                             By: /s/ A. Daniel Ullman II

                                                 A. Daniel Ullman II
                                                 Chief Trial Attorney
                                                 dullman@cftc.gov
                                                 (202) 418-5420

                                                 Danielle Karst
                                                 Senior Trial Attorney, *pro hac vice pending*
                                                 dkarst@cftc.gov
                                                 (202) 418-6158

                                                 John Einstman, *pro hac vice pending*
                                                 Chief Trial Attorney
                                                 jeinstman@cftc.gov
                                                 (202) 418-5337

                                                 Commodity Futures Trading Commission
                                                 Division of Enforcement
                                                 1155 21st Street, N.W.
                                                 Washington, DC  20581
                                                 Telephone:  (202) 418-5000
                                                 Facsimile:  (202) 418-5523

                                                 ATTORNEYS FOR PLAINTIFF
                                                 COMMODITY FUTURES TRADING
                                                 COMMISSION