

**U.S. COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, NW, Washington, DC 20581
Telephone: (202) 418-5320
Facsimile: (202) 418-5523
www.cftc.gov

Division of
Enforcement

DANIELLE E. KARST
TRIAL ATTORNEY
(202) 418-6158 DIRECT
DKarst@cftc.gov

December 1, 2022

**VIA Electronic Case Filing System (ECF)**
The Honorable Vera M. Scanlon
United States District Court
Eastern District of New York
225 Cadman Plaza East, 1214 South
Brooklyn, NY 11201

Re:   *CFTC v. Yehuda L. Belsky and Y Trading, LLC,* No. 1:18-cv-5408-NG-VMS –
      CFTC's Response to Defense Counsel's November 18, 2022 Status Report and
      Motion for a Stay

Dear Judge Scanlon:

      Plaintiff Commodity Futures Trading Commission ("CFTC") submits this response to defense counsel's November 18, 2022 submission and motion for a stay.[1]  Status Report, D.E. 39.  Although defense counsel had previously moved the Court to appoint Mr. Belsky's brother-in-law to act as the guardian ad litem of both Mr. Belsky and Y Trading, LLC, counsel now seeks to "reinstate the stay of litigation in the civil case until the actual completion of the criminal proceedings" on the basis of prejudice to Mr. Belsky's "interests in the criminal litigation" and the "primacy of the criminal process."  Status Report at 6-7, D.E. 39.  Specifically, counsel asks the Court "to follow the lead of Judge Ross in the criminal action and abstain from proceeding at this time."  Status Report at 7, D.E. 39.

      The CFTC sets forth its response to counsel's motion for an indefinite stay considering all of the relevant Second Circuit factors and submits that Mr. Belsky's Fifth Amendment rights are not substantially implicated at this stage given his previous guilty plea and agreement to pay restitution to defrauded victims as part of that plea.  The CFTC appreciates that the circumstances of this case are unique and understands an additional stay of limited duration may be warranted to provide time for further evaluation of Mr. Belsky's medical condition by his treating physicians.[2]  However, the CFTC reiterates its opposition to continued successive stays

---

[1] Defense counsel's submission includes a status report, response to the Court's September 30, 2022 Order, and letter motion seeking a stay of the civil proceedings.  Status Report, D.E. 39.

[2] The most recent report submitted by counsel concerning Mr. Belsky's medical condition is from June 2022.  Status Report at 1, D.E. 39.

which prevent this case from proceeding. As there is no timetable for Mr. Belsky's sentencing, initially scheduled for November 2019, or resolution of the criminal proceedings, it is possible that a complete stay in this case could exist for the foreseeable future with the Parties and the Court confronting the same issues. In the event Mr. Belsky's condition continues to remain unchanged, the appointment of a guardian ad litem by the Court is necessary.

## I.     A Continued, Indefinite Stay Is Unlawful

On September 26, 2018, the CFTC filed a five-count Complaint against Defendants Belsky and Y Trading, LLC for binary options and commodity trading advisor fraud, violation of a previous CFTC Order, false statements to the CFTC, and failure to register as a commodity trading advisor. Complaint, D.E. 1. This case has already been delayed for over four years by successive stays and extensions including those imposed prior to Mr. Belsky's health issues, as highlighted by the record summarized below:

- On October 18 and November 1, 2018, the Court granted Defendants' motions for extensions of time to file an answer. Orders dated Oct. 18 and Nov. 2, 2018.

- On November 18, 2018, the Court stayed this civil case pending resolution of the criminal case, *United States v. Belsky*, 1:18-cr-504 (ARR), "by verdict, pretrial disposition, or until otherwise allowed by the Court." Order dated Nov. 19, 2018, D.E. 19.

- On July 14, 2021, the Court lifted the stay of discovery in this civil case and granted the U.S. Attorney's Office request for an order "staying final resolution of the civil case until the resolution of the criminal case." Order dated July 14, 2021, D.E. 21.

- On August 18, 2021, the Court granted defense counsel's motion for extension of time to answer by November 5, 2021 and motion for a 65-day stay. Order dated Aug. 18, 2021.

- On October 29, 2021, the Court granted defense counsel's motion for an additional 98-day stay to evaluate Mr. Belsky's condition. Order dated Oct. 29, 2021.

- On March 7, 2022, the Court granted defense counsel's motion for an additional 90-day stay. Order dated Mar. 7, 2022.

- On May 3, 2022, the Court granted defense counsel's motion for extension of time to file medical reports by June 17, 2022. Order dated May 3, 2022.

- On May 18, 2022, the Court granted defense counsel's motion for extension of time for Y Trading, LLC to file an answer by July 11, 2022 and to submit a proposal regarding how its corporate affairs are being or will be managed by June 17, 2022. Order dated May 18, 2022.

- On August 18, 2022, the Court granted defense counsel's motion to adjourn the scheduled August 25, 2022 status conference to September 30, 2022. Order dated Aug. 18, 2022.

If the Court grants defense counsel's motion for a stay which is wholly dependent upon whether Mr. Belsky is sentenced, this case could very well remain in limbo for years to come with no resolution. An indefinite stay of this case pending final resolution of the criminal proceedings has the practical effect of placing the CFTC and the defrauded victims out of court. Courts have found that stays indefinite in scope and duration such as the one sought here are unlawful. *See, e.g.*, *Hall v. Del Toro*, No. 1:18-cv-355, 2022 WL 2752621, at *5 (D.R.I. July 14, 2022) (denying motion for indefinite continuation of stay "until a medical evaluation is provided that states otherwise" and concluding that "if a litigant is found to be mentally 'incompetent,' the Federal Rules of Civil Procedure do not authorize an indefinite stay"); *Trujillo v. Conover & Co. Commc'ns. Inc.*, 221 F.3d 1262, 1264-65 (11th Cir. 2000) (vacating an order staying proceedings and concluding stay was "indefinite" where it remained in effect until litigation in Bahamian courts concluded); *Fishman Jackson PLLC v. Israely*, 180 F. Supp. 3d 476, 483 (N.D. Tex. 2016) ("[N]otwithstanding a district court's wide discretion to grant a stay under its inherent powers, a discretionary stay must not be immoderate or of an indefinite duration") (quoting *In re Ramu Corp.*, 903 F.3d 312, 318 (5th Cir. 1990)). Defense counsel's periodic updates to the Court in the criminal and/or civil action do not make the stay less indefinite because it "does not guarantee that the district court will reassess the propriety of the stay every [four] months." *Trujillo v. Conover & Co. Commc'ns. Inc.*, 221 F.3d at 1264 n.3 (rejecting argument that a stay is not indefinite because the district court ordered the parties to submit status reports on Bahamian litigation).

## II. A Continued, Indefinite Stay Is Not Justified Applying the Factors Considered by Second Circuit Courts

Defense counsel's November 18, 2022 motion for a continued stay discusses some of the factors considered by Second Circuit courts but not all of them. Courts have found that a stay of a civil case "to permit conclusion of a related criminal prosecution" is "an extraordinary remedy." *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2d Cir. 2012); *CFTC v. LaMarco*, No. 2:17-cv-4087-ADS-AKT, 2018 WL 2103208, at *4 (E.D.N.Y. May 7, 2018) (characterizing stay of a civil case as "extraordinary remedy" and denying defendant's motion to stay civil case pending outcome of criminal appeal). In determining whether to stay a civil proceeding pending the outcome of a related criminal case, courts consider the following

3

factors: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on defendants; (5) the interests of the courts; and (6) the public interest. *Louis Vuitton*, 676 F.3d at 99.

### A.     Mr. Belsky's Fifth Amendment Rights Do Not Mandate a Stay (Factor 4)

Defense counsel argues generally that Mr. Belsky's Fifth Amendment rights are implicated and that an indefinite stay is warranted solely on this basis without explaining how a complete stay is the only feasible way to protect his rights. Status Report at 2-3, D.E. 39. Although a defendant retains his Fifth Amendment privilege until after sentencing, "[a] defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995). While a district court may stay civil proceedings pending completion of a parallel criminal case, it is not required to do so by the Constitution. *SEC v. Braslau*, No. 2:14-cv-1290, 2015 WL 9591482, at *2 (C.D. Cal. Dec. 29, 2015) (denying defendant's motion to stay where his Fifth Amendment rights are not sufficiently implicated to warrant a length stay) (citing *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989)). When deciding whether to grant a stay of civil proceedings, the Court "considers the **extent** to which the defendant's Fifth Amendment rights are implicated." *SEC v. Braslau*, 2015 WL 9591482, at *2 (emphasis added) (citing *Keating*, 45 F.3d at 324).

Here, Mr. Belsky's Fifth Amendment privilege is an important consideration but does not mandate a complete halt to the civil proceedings where he has already pleaded guilty to multiple counts in connection with the same underlying conduct at issue in this case, including to Commodity Exchange Act violations, 7 U.S.C. §§ 6m(1), 13(a)(1), 13(a)(5). *United States v. Belsky*, No. 1:18-cr-504-ARR (E.D.N.Y. June 25, 2019), D.E. 45. Mr. Belsky's criminal proceedings were far along prior to the postponement of his sentencing. Counsel has failed to demonstrate that Mr. Belsky's Fifth Amendment rights are substantially implicated at this stage where he (or his appointed guardian) is not compelled to include confidential information in his Answer which may incriminate him, for example. It is difficult to see how a blanket and indefinite stay is necessary to protect his Fifth Amendment rights. *See Arden Way Assocs. v. Boesky*, 660 F. Supp. 1494, 1497 (S.D.N.Y. 1987) (declining to stay civil proceedings pending defendant's sentencing in related criminal case and finding defendant's guilty plea should not prejudice plaintiffs in prosecuting their fraud allegations); *SEC v. O'Neill*, 98 F. Supp. 3d 219, 224 (D. Mass. 2015) (denying stay of civil case pending resolution of parallel criminal case and finding "[i]t is difficult to see how answering the complaint could prejudice his rights" where defendant "has pled guilty to the criminal offense and has thus already incriminated himself.").

In addition, defense counsel's motion for a complete stay on all proceedings is overbroad and sweeps in Y Trading, LLC, a corporate defendant that lacks Fifth Amendment rights. *See, e.g.*, *State Farm Mutual Auto. Ins. Co. v. Grafman*, No. 1:04-cv-2609-NG, 2007 WL 4285378, at *2 (E.D.N.Y. Dec. 1, 2007) ("A corporation, even one controlled by a single individual, has no Fifth Amendment right not to testify."); *IBM Corp. v. Brown*, 857 F. Supp. 1384, 1390 (C.D. Cal. 1994) (rejecting stay for pending criminal proceedings, noting that "[t]he corporate defendants . . . enjoy no Fifth Amendment privilege"). In the event the Court appoints a guardian ad litem for Y Trading, LLC, there is no reason to assume that the guardian would be unable to provide information concerning the company's operations without asserting Belsky's Fifth Amendment rights, for example.

### B. The Remaining Factors Weigh Against a Stay (Factors 1, 2, 3, 5 and 6)

As to the first factor, there is no question that the criminal and civil cases have overlapping issues. However, this is a threshold issue and the status of the criminal case—the second factor—weighs against granting a stay. There is no dispute that the criminal case has progressed past indictment all the way to Belsky's June 25, 2019 guilty plea, and that Belsky was scheduled to be sentenced in November 2019. *United States v. Belsky*, No. 1:18-cr-504-ARR (E.D.N.Y.).

As to the third, fifth, and sixth factors, "Plaintiff, the Court, and the public have an interest in the expeditious resolution of its case." *See CFTC v. LaMarco*, 2018 WL 2103208, at *5 (citing *In re Bolin Co.*, No. 3:08-cv-1793, 2012 WL 3730410, at *4 (D. Conn. June 27, 2012)). The CFTC will be prejudiced by an indefinite stay pending resolution of Belsky's criminal case given numerous factors, including the possibility that he may never be sentenced, the stays already previously ordered in the civil action, and the amount of time that has already passed since the events at issue took place.

Defendants' defrauded victims and the public at large have a strong interest in speedy resolution of this civil action, which has been pending for over four years. It is well-settled that the CFTC, an independent federal regulatory agency charged with protecting the integrity of the commodities markets, enforces the Commodity Exchange Act and has a strong interest in the prompt resolution of its enforcement actions. *See, e.g.*, *CFTC v. A.S. Templeton Grp., Inc.*, 297 F. Supp. 2d 531, 535 (E.D.N.Y. 2003). The CFTC seeks restitution on behalf of Defendants' victims and additional delay diminishes the possibility that they will obtain any redress for their losses. *See Avalonbay Cmtys., Inc. v. San Jose Water Conservation Corp.*, No. 1:07-cv-306, 2007 WL 2481291, at *4 (E.D. Va. Aug. 27, 2007) (denying motion for stay "unrestricted in scope" where plaintiff will be prejudiced by "risking the loss of documents, the fading of witnesses' memories, and the deterioration of Defendants' financial resources available for any judgment"). Although there is an interest in protecting the integrity of the criminal process, this interest does not outweigh the direct interest of defrauded victims in recovering funds. The

Court's interest in efficiently managing its docket will also be negatively impacted by an indefinite stay. *See A.S. Templeton Grp., Inc.*, 297 F. Supp. 2d at 535-36 (finding "convenience of the courts is best served when motions to stay proceedings are discouraged" and noting practice of granting stay in parallel suits would create "a constant source of delay and an interference with judicial administration") (internal citations omitted). For all the reasons discussed above, the interests of the CFTC, the Court, the victims, and the public at large weigh against an indefinite stay.

### III. A Guardian Ad Litem Should Be Appointed for Both Defendants

In civil actions, unlike criminal cases, proceedings are not postponed until a defendant is deemed competent, and a guardian ad litem may be appointed under Fed. R. Civ. P. 17(c) for incompetent defendants. *United States v. Mandycz*, 351 F.3d 222, 225 n.1 (6th Cir. 2003) (concluding "a civil defendant's mental incompetence does not trigger an abatement of trial as it does in the criminal context"). Fed. R. Civ. P. 17(c) requires the Court to appoint a guardian ad litem to protect an unrepresented party who is incompetent ("The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person."). While Rule 17(c) does not provide a standard for determining competency, Rule 17(b) provides that the capacity of a party to sue or be sued is determined "by the law of the individual's domicile." Therefore, whether Mr. Belsky is incompetent under Rule 17(c) is determined by applying the law of his domicile which is New York. Compl. ¶ 13, D.E. 1. Under N.Y. C.P.L.R. § 1201 which governs the appointment of a guardian ad litem, "[t]he party seeking appointment of a guardian ad litem must show by a preponderance of the evidence that the individual's 'condition impedes [his or] her ability to protect [his or] her rights.'" *Francisque v. Finkle, J.R., Inc.*, No. 1:16-cv-3637, 2019 WL 2027434, at *1-2 (E.D.N.Y. May 8, 2019) (quoting *N.Y. Life Ins. Co. v. V.K.*, 711 N.Y.S.2d 90, 96 (N.Y. Civ. Ct. 1999)). Under New York law, "a guardian ad litem may be appointed by a court at any stage of an action in which an adult is incapable of adequately prosecuting or defending his rights, even where no formal adjudication of incompetence has been made." *Bowen v. Rubin*, 213 F. Supp. 2d 220, 223 (E.D.N.Y. 2001).

Defense counsel argues that the appointment of a guardian ad litem in the civil case would prejudice Mr. Belsky because the guardian may be "pressed to settle" and may "make decisions" contrary to his "best interest." Status Report at 6, D.E. 39. These arguments are premature and speculative. As to a potential settlement involving a guardian ad litem, the Court has the power and obligation to oversee the fairness of any settlement agreement to which an incompetent litigant is a party and can assess whether the incompetent party has been adequately represented and whether the settlement is in the incompetent's interests. *See Desmoulins v. City of New York*, 394 F.App'x 785 (2d Cir. 2010) (affirming district court's approval of a settlement agreement entered into between defendants and a guardian ad litem acting on behalf of plaintiffs).

6

### IV. A Determination of Civil Damages Does Not Undermine the Criminal Proceedings

Finally, defense counsel expresses concern over a civil restitution order undermining the criminal proceedings, but this is speculative and an insufficient basis for a stay. *See Arden Way Assocs. v. Boesky*, 660 F. Supp. 1494, 1498 n.3 (S.D.N.Y. 1987) ("There is little risk that submitting an appropriate Answer or asserting the Fifth Amendment privilege in these civil suits will prejudice his sentence in the criminal proceeding where [defendant] has already acknowledged criminality by a plea of guilty."). Here, Mr. Belsky has already entered a guilty plea for the underlying conduct and has agreed to pay "restitution in full amount of each victim's losses as [the court] order[s]." Plea Transcript at 19:5-8, 20:14-16, *United States v. Belsky* (E.D.N.Y. June 25, 2019). In fact, Mr. Belsky has already submitted a Sentencing Memorandum proposing a specified amount of restitution. Sentencing Mem. of Belsky at 24, *United States v. Belsky* (E.D.N.Y. Dec. 30, 2019), D.E. 57 (concluding that "restitution should be limited to $803,385, representing the victims' actual loss"). If this case proceeds, the Parties can revisit this issue with the Court and potentially postpone a final determination of restitution and civil monetary penalties. Similarly, in the event the Parties reach a settlement, it is possible for a settlement agreement to include a provision providing dollar-for-dollar credit for any restitution payments Mr. Belsky makes in the criminal case and/or providing that Mr. Belsky's payment of criminal restitution as part of the criminal sentence he receives will have priority over payment of any civil monetary penalty imposed. *See, e.g.*, *CFTC v. Thompson*, No. 1:19-cv-9052, 2020 WL 7122013, at *13 (S.D.N.Y. Oct. 1, 2020) (consent order providing defendant "shall receive a dollar-for-dollar credit" against the civil restitution for "payments made in satisfaction of any restitution ordered in the Criminal Action"); *CFTC v. Cassidy*, No. 1:08-cv-9962, 2009 WL 5454918, at *6 (S.D.N.Y. Nov. 5, 2009) (consent order providing defendant's "payment of criminal restitution as part of the criminal sentence he receives . . . shall have priority over payment of the civil monetary penalty imposed herein").

### Conclusion

Given that the criminal case appears likely to be delayed indefinitely and balancing all of the relevant factors, the CFTC opposes defense counsel's motion for an indefinite stay. The CFTC requests that the Court appoint a guardian ad litem to represent both Defendants in order to allow this case to proceed.

Sincerely,

Danielle E. Karst

cc: Counsel of record (via ECF)

7