UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
COMMODITY FUTURES TRADING :
COMMISSION, :
:
                 Plaintiff, : **REPORT AND RECOMMENDATION**
:
   -against- : 18 Civ. 5408 (NG) (VMS)
:
YEHUDA L. BELSKY and Y TRADING, LLC, :
:
               Defendants. :
:
---------------------------------------------------------- X

**Vera M. Scanlon, United States Magistrate Judge:**

      Presently before the Court is the motion of Defendants Yehuda L. Belsky ("Mr. Belsky") and Y Trading, LLC ("Y Trading" and, collectively with Mr. Belsky, "Defendants") to stay this action or, alternatively, to appoint a guardian ad litem for Defendants.[1] See generally ECF No. 39. Plaintiff Commodity Futures Trading Commission ("Plaintiff") opposes the former and consents to the latter. See generally ECF No. 40. For the reasons discussed below, the Court respectfully recommends that the District Court grant Defendants' motion for a stay; deny, without prejudice, Defendants' alternative motion to appoint a guardian ad litem for Mr. Belsky; and deny, without prejudice, Defendants' alternative motion to appoint a guardian ad litem for Y Trading, as improper pursuant to applicable law.

---

[1] Defendants, as well as Plaintiff, discuss the appointment of a guardian ad litem as for both Mr. Belsky and Y Trading. See, e.g., ECF No. 35 at 1 (Defendants requesting "that a guardian ad litem be appointed for each defendant" (footnote omitted)); ECF No. 39 at 3 (Defendants "recommend[ing] that the Court appoint David Berger to act as both Mr. Belsky Y Trading LLC's representative, should the Court find it necessary to appoint a guardian at this time"); ECF No. 40 at 7 (Plaintiff "request[ing] that the Court appoint a guardian ad litem to represent both Defendants"). As discussed, infra, Sec. III(B), the impression of Plaintiff and Defendants that a guardian ad litem may be appointed for Y Trading, pursuant to the framework set forth by applicable law, is incorrect.

1

## I. BACKGROUND

On September 26, 2018, Plaintiff Commodity Futures Trading Commission ("Plaintiff") commenced this action against Defendants Yehuda L. Belsky ("Mr. Belsky") and Y Trading, LLC ("Y Trading" and, collectively with Mr. Belsky, "Defendants").  See generally ECF No. 1. Plaintiff asserted claims for (1) fraud in connection with binary options, in violation of 7 U.S.C. § 6c(b) and 17 C.F.R. §§ 32.4(a), (c), against Defendants; (2) violation of Plaintiff's order, in violation of 7 U.S.C. § 13a-1(a), against Mr. Belsky; (3) failure to register as a commodity trading advisor, in violation of 7 U.S.C. § 6m(1), against Mr. Belsky; (4) fraud by a commodity trading advisor, in violation of 7 U.S.C. §§ 6o(1)(A), (B), against Mr. Belsky; and (5) false statements to Plaintiff, in violation of 7 U.S.C. § 9(2), against Mr. Belsky.

On November 9, 2018, the United States Attorney's Office for the Eastern District of New York (the "USAO") moved to intervene and to stay this action, in view of the pendency of a parallel criminal action, United States v. Belsky, No. 18 Crim. 504 (ARR) (E.D.N.Y.), in which Mr. Belsky is a defendant, which Plaintiff and Defendants did not oppose.  See ECF No. 17-1 at 2.  The District Court granted the motion to stay this action "pending resolution of the criminal matter."  ECF No. 19 at 1.

On June 14, 2021, the USAO filed a letter stating that, on June 25, 2019, Mr. Belsky pleaded guilty to the three counts of the superseding information in the criminal action.  See ECF No. 20 at 1.  The USAO therefore informed the Court that it no longer viewed a stay of discovery as necessary but that it continued to view a stay of "final resolution" of this action, until sentencing, as necessary to "permit[] the government to complete its prosecution in the Criminal Case."  Id. at 1-2.  In the absence of any opposition to the USAO's letter, the District Court granted the motion to lift the stay of this action as to discovery, as well as the motion to

leave in place the stay of "final resolution" of this action pending resolution of the criminal action. See ECF No. 21 at 1. The parties subsequently filed a joint proposed discovery order, see ECF No. 23, but Defendants' counsel also first moved for a stay relating to Mr. Belsky's capacity, see ECF No. 24. Defendants have since obtained various additional time-limited stays and extensions, in view of the parallel criminal action and Mr. Belsky's medical condition. See 7/19/2021 Order; 8/18/2021 Order; 10/29/2021 Order; 3/7/2022 Order; 5/3/2022 Order; 5/18/2022 Order.

In light of Mr. Belsky's health issues, Defendants moved for the appointment of David Berger ("Mr. Berger"), Mr. Belsky's brother-in-law, as guardian ad litem for both Mr. Belsky and Y Trading "for the limited purpose of acting on Mr. Belsky's behalf for this litigation only" and for an extension of time to answer or otherwise respond to the complaint until two weeks after such appointment. ECF No. 35 at 1-2. Plaintiff responded to Defendants' motion, consenting to the appointment of a guardian ad litem as proposed, noting that Plaintiff lacked "sufficient information at this time to take a position on the suitability of [David Berger's] . . . appointment," and raising that "it may be necessary for the Court to make a formal determination of Belsky's incompetence prior to the appointment of a guardian." ECF No. 37 at 1 (footnote omitted).

The Court invited further submissions from Plaintiff and Defendants.

Defendants then moved for the imposition of a stay in this action pending Mr. Belsky's sentencing in the criminal action, (1) as Mr. Belsky's "Fifth Amendment rights remain intact," even after his plea of guilty; (2) as making determinations as to relief in this action will raise various issues, including (a) difficulties in obtaining discovery as to damages, in view "of Mr. Belsky's current incapacitation" and retention of "his Fifth Amendment privilege until after his

3

criminal sentencing hearing," (b) the "collateral estoppel impact on subsequent factual findings in the criminal case for restitution purposes if [this action] . . . proceeds prior to sentencing in the criminal case," which "could impact the integrity of the criminal proceedings" due to insufficient information, (c) judicial economy concerns, and (d) the possibility that, "if the Court were able to reach final judgment in this civil litigation before the conclusion of the criminal case, its judgment could have priority over the monetary judgments in the criminal case, which again acts to undermine the public's interest in elevating criminal judgments over civil ones . . . and potentially prejudices Mr. Belsky because this Court could enter judgment based on incomplete evidence or as a result of less due process than Mr. Belsky is afforded in the criminal case"; and (3) as a guardian ad litem may be unable to protect Mr. Belsky's interests, in view of the limited information available and the inability "to consult with Mr. Belsky to obtain explanations of documents and accounts or obtain any other information." ECF No. 39 at 2-6 (citation omitted). Defendants alternatively request the appointment of Mr. Berger as guardian ad litem for both Mr. Belsky and Y Trading, in view of Mr. Belsky's unchanged permanent neurological and neuropsychological impairments, and his poor prognosis. See id. at 1, 3-4. Defendants additionally inform the Court that the USAO's position on the criminal action is that the sentencing should not proceed at this time and that the parties are to provide quarterly updates in the criminal action. See id. at 1-2.

     Plaintiff responded to Defendants' motion, opposing "continued successive stays which prevent this case from proceeding," while recognizing that "an additional stay of limited duration may be warranted to provide time for further evaluation of Mr. Belsky's medical condition by his treating physicians." ECF No. 40 at 1-2 (footnote omitted). More specifically, Plaintiff argues that, "[i]f the Court grants defense counsel's motion for a stay which is wholly dependent upon

4

whether Mr. Belsky is sentenced, this case could very well remain in limbo for years to come with no resolution," which "has the practical effect of placing the CFTC and the defrauded victims out of court." Id. at 3. Plaintiff then recites and applies the six-factor test employed in the Second Circuit for determining whether the stay of a civil action pending the outcome of a parallel criminal action is appropriate. See id. at 3-6. Plaintiff contends that, "[i]n the event Mr. Belsky's condition continues to remain unchanged, the appointment of a guardian ad litem by the Court [for both Defendants] is necessary" and argues that Defendants' statements as to the guardian ad litem's inability to protect Mr. Belsky's interests are "premature and speculative." Id. at 2, 6-7. As to the impact, if any, of making determinations as to relief in this action on the criminal action, Plaintiff argues that, "[i]f this case proceeds, the Parties can revisit this issue with the Court and potentially postpone a final determination of restitution and civil monetary penalties," and that, "in the event the Parties reach a settlement, it is possible for a settlement agreement to include a provision providing dollar-for-dollar credit for any restitution payments Mr. Belsky makes in the criminal case and/or providing that Mr. Belsky's payment of criminal restitution as part of the criminal sentence he receives will have priority over payment of any civil monetary penalty imposed." Id. at 7 (citations omitted).

## II.     MOTION FOR A STAY

### A.     Legal Standard

Generally, "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 96-97 (2d Cir. 2012) (quotations & citations omitted). In deciding whether to "stay civil proceedings when related criminal proceedings are imminent or pending," courts in the Second

5

Circuit "have often utilized a six-factor balancing test . . . : 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest." Id. at 98-99 (citations & footnote omitted). This balancing test "act[s] as a rough guide for the district court as it exercises its discretion," rather than serving as a "mechanical device[] churning out correct results in overlapping civil and federal proceedings, replacing the district court's studied judgment as to whether the civil action should be stayed based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." Id. at 99.

  Courts in the Second Circuit have stayed proceedings, in light of the pendency of a parallel criminal action, in which Plaintiff is a plaintiff. See, e.g., Commodity Futures Trading Comm'n v. Spence, No. 21 Civ. 699 (JGK), 2021 WL 2158019, at *1 (S.D.N.Y. May 26, 2021) (considering the motion of the "defendant's appointed counsel in the related criminal case . . . to stay this case because of the prejudice to the defendant in the ongoing criminal case," which the plaintiff opposed, and holding that "there is a sufficient reason to stay this case pending a decision in the criminal case," as (1) "[p]ursuing this case would place the defendant in a difficult position in connection with his right to invoke his Fifth Amendment privilege," (2) the disposition of the criminal case may well have dispositive consequences for this civil case," (3) "the defendant will be harmed by the active pursuit of this case," and (4) the plaintiff "has not articulated a reason why it would be prejudiced by a stay"); U.S. Commodity Futures Trading Comm'n v. Park, No. 16 Civ. 4120 (VEC), ECF No. 20 at 1-2 & ECF No. 30 at 1-2 (S.D.N.Y.

6

July 13, 2016 & July 19, 2017) (considering the motion of the United States Attorney's Office for the Southern District of New York to intervene in the action and to stay the action "pending the completion of the trial or other disposition in the parallel criminal case," granting the motion, and lifting the stay only after the individual defendant had both entered a plea of guilty and been sentenced (citation omitted)); U.S. Commodity Futures Trading Comm'n v. Cosmo, No. 2:9 Civ. 351 (LDW) (ARL), ECF No. 17-1 at 14, ECF No. 18 at 12, ECF No. 19 at 12, 3/24/2009 Dkt. Entry, ECF No. 24 at 2, & ECF No. 28 at 1 (E.D.N.Y. Mar. 23, 2009, Mar. 24, 2009, Nov. 23, 2011 & Mar. 19, 2012) (approving proposed consent orders that, inter alia, stayed the action pending resolution of "the related criminal matter" and lifting the stay subsequent to the individual defendant's sentencing); see also S.E.C. v. Princeton Econ. Int'l Ltd., No. 99 Civ. 9667 (RO), 2000 WL 193131, at *1-2 (S.D.N.Y. Feb. 17, 2000) (considering the motion of the United States Attorney's Office for the Southern District of New York, which had intervened in the action, "for a stay of certain discovery . . . until the parallel criminal case is completed" and granting the motion, as (1) "the Government [is] seeking only a partial stay for a limited duration"; (2) "the criminal proceeding and grand jury investigations involve many of the same issues, evidence, and witnesses as the civil proceeding"; and (3) "Armstrong[, the individual defendant,] will have appropriate opportunity for discovery at the conclusion of the criminal trial" (citations omitted)).[2]

---

[2] The Court notes that, as here, in Park and Princeton, the civil actions each involved multiple defendants, whereas the parallel criminal actions involved only one defendant, but the courts in each instance imposed stays as to all defendants in the civil actions. See generally U.S. Commodity Futures Trading Comm'n v. Park, No. 16 Civ. 4120 (VEC) (S.D.N.Y.); USA v. Park, No. 16 Crim. 473 (RA) (S.D.N.Y.); S.E.C. v. Princeton Economics Int'l Ltd., No. 99 Civ. 9667 (PKC) (S.D.N.Y.); USA v. Armstrong, 99 Crim. 997 (JFK) (S.D.N.Y.). The Court respectfully recommends adopting the same approach here.

The decisions denying stays within the Circuit cited by Plaintiff do not require a different result, as applicable to this action.

In U.S. Commodity Futures Trading Comm'n v. Lamarco, No. 2:17 Civ. 4087 (ADS) (AKT), 2018 WL 2103208 (E.D.N.Y. May 7, 2018), the court denied the individual defendant's motion to stay the action "pending an appeal of his criminal conviction," where he had entered a guilty plea and been sentenced in the criminal action prior to the commencement of the civil action, given, inter alia, that "courts have found that civil cases should not be stayed while a criminal appeal is pending." Id., at *1, *4 (citations omitted)). Here, by contrast, Mr. Belsky has yet to be sentenced in the criminal action. See generally United States v. Belsky, No. 18 Crim. 504 (ARR) (E.D.N.Y.).

In Arden Way Assocs. v. Boesky, 660 F. Supp. 1494 (S.D.N.Y. 1987), the court denied the individual defendant's motion to stay the action, in view of the pendency of a parallel criminal action where he had entered a guilty plea and where his sentencing was scheduled for less than three months subsequent to the date of the decision on the stay of the civil action. Id. at 1495, 1500. The court recognized that "[c]ourts issuing discretionary stays based on Fifth Amendment considerations have relied on the apparent unfairness of forcing a litigant to choose between invoking the Fifth Amendment in a civil case, thus risking a loss there, or answering questions in the civil context, thus risking subsequent criminal prosecution," but that the individual defendant "faces none of those burdens at this time by merely serving an Answer," where he could assert the Fifth Amendment privilege and where the court could grant him leave to amend his answer following his imminent sentencing. Id. at 1498-1499 (citation omitted). Here, by contrast, due to the respective postures of this action and the criminal action, and Mr. Belsky's continuing ill health, which has prevented his participation in either action, the court is

8

unable to fashion a similar procedure to permit the civil action to proceed, while protecting Mr. Belsky's Fifth Amendment privilege.

In State Farm Mut. Auto. Ins. Co. v. Grafman, No. 4 Civ. 2609 (NG) (SMG), 2007 WL 4285378 (E.D.N.Y. Dec. 1, 2007), as to the indicted individual defendants, the court granted the motion to stay discovery, in view of the pendency of a parallel criminal action. Id., at *1-2 (citations omitted).  As to the corporate defendants, the court recognized "that there may be circumstances where staying a corporation's duty to respond to discovery demands is the fairest and most efficient way for litigation to proceed," including in cases involving "an indicted individual defendant and discovery is sought from a corporation under that defendant's sole control." Id., at *3 (citations omitted).  As such, the court granted the motion to stay the obligation of the corporate defendants controlled by the indicted individual defendants to respond to interrogatories and to produce witnesses for Rule 30(b)(6) depositions, provided that "no one else [was] available to testify on their behalf," but denied the motion to stay the obligation of the same corporate defendants to produce document discovery, as (1) the corporations controlled by one of the indicted individual defendants did not object to doing so, (2) one such corporate defendant likely employed an account or bookkeeper who could produce the necessary documents without implicating the Fifth Amendment privilege, (3) these corporate defendants could appoint agents to handle the productions, and (4) staying production of these corporate defendants' documentary discovery obligations was "critical to the orderly progress of discovery," in view of the ongoing involvement of other parties. Id., at *3.  Here, by contrast, (1) Y Trading has objected to proceeding with this action at this juncture, see ECF No. 39 at 2; (2) Y Trading "is a single-member limited liability company, of which Mr. Belsky is the only member," with "no employees or any other representatives," see ECF No. 35 at 1 n.1; (3) Mr.

9

Belsky's unchanged medical condition, see ECF No. 39 at 1, in view of his sole control of Y Trading and his lack of a general guardian, prevents Y Trading from appointing an agent to facilitate document productions in this action, see supra, Sec. III(B); and (4) Mr. Belsky and Y Trading are the only Defendants in this action, such that staying the action as to them does not affect the progress of the action as to other defendants.

In In re Bolin & Co., No. 3:8 Civ. 1793 (SRU), 2012 WL 3730410 (D. Conn. June 27, 2012), the court denied the motion of the plaintiff, the trustee of the estate of Bolin & Company, LLC ("Bolin"), to stay the action pending resolution of a criminal action against Bolin's former bankruptcy trustee. Id., at *1 (citations omitted). In spite of the plaintiff's argument as to the necessity of a stay, namely that "he cannot adequately respond to the motion for relief without [the former bankruptcy trustee's] . . . testimony," which was precluded by the pendency of the criminal action and the Fifth Amendment privilege, the court reasoned, inter alia, (1) that, "although there is some overlap between this action and [the former bankruptcy trustee's] . . . criminal case, the overlap is not complete"; (2) that "there is no overlap of parties between the civil and criminal cases"; and (3) that "there is no guarantee that [the former bankruptcy trustee] . . . will be any more cooperative once his criminal case concludes," particularly given that his plea agreement does not provide immunity for potential state charges. Id., at *2-3 (citation omitted). Here, by contrast, (1) Plaintiff admits to the overlap between this action and the criminal action, ECF No. 40 at 5; (2) Mr. Belsky, a Defendant in this action, as a criminal defendant in the parallel action, see generally United States v. Belsky, No. 18 Crim. 504 (ARR), ECF No. 1 (E.D.N.Y. Sept. 17, 2018); and (3) the potential lack of cooperation from a non-party is not at issue here.

In <u>U.S. Commodity Futures Trading Comm'n v. A.S. Templeton Grp.</u>, 297 F. Supp. 2d 531 (E.D.N.Y. 2003), the court denied the defendants' motion to "stay all testimonial discovery in this case pending the expiration of the statute of limitations for every crime for which Defendants could be indicted based on the illegal conduct giving rise to this action or the resolution of any related criminal prosecution of Defendants, if filed," given, <u>inter alia</u>, that "[p]re-indictment requests for a stay of civil proceedings are generally denied." <u>Id.</u> at 534 (citation omitted)). Here, by contrast, Mr. Belsky has been indicted. <u>See generally</u> <u>United States v. Belsky</u>, No. 18 Crim. 504 (ARR), ECF No. 1 (E.D.N.Y. Sept. 17, 2018).

**B.     Application**

The Court respectfully recommends that the District Court grant Defendants' motion to stay this action pending resolution of the parallel criminal action. Although the Court previously partially lifted a stay of this action, there is now in the record additional information about Mr. Belsky, and the criminal case has not progressed as expected. As to the first <u>Louis Vuitton</u> factor, Plaintiff admits that "there is no question that the criminal and civil cases have overlapping issues." ECF No. 40 at 5. As to the second <u>Louis Vuitton</u> factor, although Plaintiff contends that "the status of the criminal case . . . weighs against granting a stay," as "[t]here is no dispute that the criminal case has progressed past indictment all the way to [Mr.] Belsky's June 25, 2019 guilty plea, and that [Mr.] Belsky was scheduled to be sentenced in November 2019," <u>id.</u>, Defendants argue that Mr. Belsky's "Fifth Amendment rights remain intact," even after his plea of guilty, ECF No. 39 at 2; the Court finds the latter to be persuasive, as the critical element of this factor is whether the criminal defendant has been indicted, which Mr. Belsky has. As to the third <u>Louis Vuitton</u> factor, Plaintiff claims that prejudice would result from "an indefinite stay pending resolution of [Mr.] Belsky's criminal case given numerous factors, including the

11

possibility that he may never be sentenced, the stays already previously ordered in the civil action, and the amount of time that has already passed since the events at issue took place." ECF No. 40 at 5.  As to the fourth Louis Vuitton factor, Plaintiff contends that "Mr. Belsky's Fifth Amendment privilege is an important consideration but does not mandate a complete halt to the civil proceedings where he has already pleaded guilty to multiple counts in connection with the same underlying conduct at issue in this case, including to Commodity Exchange Act violations." Id. at 4.  Defendants compellingly respond by identifying difficulties in obtaining discovery, in view "of Mr. Belsky's current incapacitation" and retention of "his Fifth Amendment privilege until after his criminal sentencing hearing," as well as the possibility that,

> if the Court were able to reach final judgment in this civil litigation before the conclusion of the criminal case, its judgment could . . . potentially prejudice[] Mr. Belsky because this Court could enter judgment based on incomplete evidence or as a result of less due process than Mr. Belsky is afforded in the criminal case.

ECF No 39 at 4-5.  As to the fifth Louis Vuitton factor, Plaintiff contends that "[t]he Court's interest in efficiently managing its docket will also be negatively impacted by an indefinite stay," ECF No. 40 at 5-6, while Defendants raise judicial economy concerns and the potential for inconsistent findings in this action and the parallel criminal action, see ECF No. 39 at 5.  Given that final resolution of this action is currently stayed pending resolution of the criminal action, see ECF No. 21 at 1, which no party has sought to alter, the Court's interest in managing its docket would be advanced little, if any, by attempting to pursue the pretrial proceedings in this action at this juncture, given the likelihood that, as a practical matter, Mr. Belsky and Y Trading will be unable to participate unless Mr. Belsky's health improves.

As to the sixth Louis Vuitton factor, Plaintiff contends that "Defendants' defrauded victims and the public at large have a strong interest in speedy resolution of this civil action, which has been pending for over four years," ECF No. 40 at 5, while Defendants argue that the

"collateral estoppel impact on subsequent factual findings in the criminal case for restitution purposes if [this action] . . . proceeds prior to sentencing in the criminal case . . . could impact the integrity of the criminal proceedings" due to insufficient information and that, "if the Court were able to reach final judgment in this civil litigation before the conclusion of the criminal case, its judgment could have priority over the monetary judgments in the criminal case, which again acts to undermine the public's interest in elevating criminal judgments over civil ones," ECF No. 39 at 5. The Court recognizes the interests of the alleged victims and the public in seeking redress for the harm resulting from the claims alleged in this action, but it finds such interests to be of limited persuasive value in the context of its overall analysis, particularly given the pendency of the parallel criminal action and the redressability of the same harm in that forum. This Court has already addressed this concern in staying a final resolution of this action to await the sentence and to determine its implications.

On balance, and considering the totality of the Louis Vuitton factors applied here, the imposition of a stay is warranted.

### III.   MOTION FOR APPOINTMENT OF A GUARDIAN AD LITEM

Federal Rule of Civil Procedure 17(b), entitled "Capacity to Sue or Be Sued," provides that

> [c]apacity to sue or be sued is determined as follows: (1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile; (2) for a corporation, by the law under which it was organized; and (3) for all other parties, by the law of the state where the court is located, except that: (A) a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws; and (B) 28 U.S.C. §§ 754 and 959(a) govern the capacity of a receiver appointed by a United States court to sue or be sued in a United States court.

Federal Rule of Civil Procedure 17(c)(1), entitled "Minor or Incompetent Person" and, more

13

specifically, "With a Representative," provides that "[t]he following representatives may sue or defend on behalf of a minor or an incompetent person: (A) a general guardian; (B) a committee; (C) a conservator; or (D) a like fiduciary."  Federal Rule of Civil Procedure 17(c)(2), entitled "Minor or Incompetent Person" and, more specifically, "Without a Representative," provides that

> [a] minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem.  The court must appoint a guardian ad litem--or issue another appropriate order--to protect a minor or incompetent person who is unrepresented in the action.

### A.     Mr. Belsky

As to Mr. Belsky, in accordance with Federal Rule of Civil Procedure 17(b)(1), his capacity to be sued is determined by the law of his domicile, which is New York.  See ECF No. 1 ¶ 13.  NY CPLR § 1201 provides that,

> [u]nless the court appoints a guardian ad litem, an infant shall appear by the guardian of his property or, if there is no such guardian, by a parent having legal custody, or, if there is no such parent, by another person or agency having legal custody, or, if the infant is married, by an adult spouse residing with the infant, a person judicially declared to be incompetent shall appear by the committee of his property, and a conservatee shall appear by the conservator of his property.  A person shall appear by his guardian ad litem if he is an infant and has no guardian of his property, parent, or other person or agency having legal custody, or adult spouse with whom he resides, or if he is an infant, person judicially declared to be incompetent, or a conservatee as defined in section 77.01 of the mental hygiene law and the court so directs because of a conflict of interest or for other cause, or if he is an adult incapable of adequately prosecuting or defending his rights.

See also NY CPLR 1201 Practice Commentary C1201:3 (instructing that, "[w]ith respect to a party who has not been judicially declared incapacitated, yet is not functionally able to prosecute or defend his or her rights, CPLR 1201 requires that an appearance for such person be made through a guardian ad litem" (citation omitted)).  As a general guardian has not been appointed to act on Mr. Belsky's behalf, see generally ECF Nos. 35 & 39, if the Court were not to have

14

recommended the imposition of a stay, the Court would consider whether the appointment of a guardian ad litem to act on Mr. Belsky's behalf would be appropriate. Should this case not go forward at this time, the guardian ad litem is not necessary. Any determination of incapacity in this case could impact the criminal case, so restraint on this issue is warranted. The Court respectfully recommends denial without prejudice.

### B. Y Trading

As to Y Trading, in accordance with Federal Rule of Civil Procedure 17(b)(3), its capacity to be sued is determined by the law of the forum, which is New York. NY Limit. Liab. Co. § 202 provides that,

> [u]nless the articles of organization provide otherwise and subject to any limitations provided in this chapter or any other law of this state, a limited liability company may: (a) sue or be sued, or institute, participate in or defend any action or proceeding, whether judicial, arbitrative, administrative or otherwise, in its name.

NY Limit. Liab. Co. § 608 provides, in pertinent part, that,

> [i]f a member who is a natural person dies or a court of competent jurisdiction adjudges him or her to be incompetent to manage his or her person or his or her property, the member's executor, administrator, guardian, conservator or other legal representative may exercise all of the member's rights for the purpose of settling his or her estate or administering his or her property, including any power under the operating agreement of an assignee to become a member.

See Crabapple Corp. v. Elberg, 60 N.Y.S.3d 124, 125 (1st Dep't 2017) (noting that "[t]he relevant agreements contained no provision regarding the succession of management of the LLCs in the event of the death of Jacob, the majority member," and that, as such, "Jacob's controlling interest in the LLCs passed to his estate upon his death, and Elberg and Pewzner, the co-executors of the estate, had the authority to act as co-managers of the LLCs" (citations omitted)). Although both Plaintiff and Defendants discuss the appointment of a guardian ad litem for Y Trading, see supra, n.1, such an appointment would not be permitted pursuant to

15

federal and, by extension, New York law. The procedure for seeking the appointment of a representative to act on Mr. Belsky's behalf in his capacity as a member of Y Trading would be to seek an adjudication of Mr. Belsky's incompetence and the appointment of a general guardian on his behalf. See NY Limit. Liab. Co. § 608. To instead appoint a guardian ad litem to act on behalf of Mr. Belsky and, by extension, Y Trading, would function as an end-run around the procedures set forth by New York law. As the Court has recommended the imposition of a stay, it need not consider these issues any further at this juncture. For now, the Court respectfully recommends denying the motion without prejudice. Any future motion as to Y Trading must follow the proper procedures for an LLC.

## IV.   CONCLUSION

For the reasons set forth above, the Court respectfully recommends that the District Court grant Defendants' motion for a stay; deny, without prejudice, Defendants' alternative motion to appoint a guardian ad litem for Mr. Belsky; and deny, without prejudice, Defendants' alternative motion to appoint a guardian ad litem for Y Trading, as improper pursuant to applicable law.

## V.   OBJECTIONS

Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen days of service. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen-day period for filing objections. Failure to file objections within fourteen days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals. See Miller v. Brightstar Asia, Ltd., 43 F. 4th 112, 120 (2d Cir. 2022) (reasoning that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that

16

when a party fails to object timely to a magistrate's recommended decision, it waives any right to further review of that decision") (internal citation & quotations omitted).

Dated: Brooklyn, New York
August 31, 2023

*Vera M. Scanlon*
_____
VERA M. SCANLON
United States Magistrate Judge
